THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.*
RICHARD L. NESTRICK, Defendant-Appellee.

Third District   No. 76-242

Opinion filed January 25, 1977.

Fred R. Odendahl, State's Attorney, of Monmouth, for the People.

James R. Standard, of Monmouth, for appellee.

Mr. JUSTICE BARRY delivered the opinion of the court:

The defendant, Richard L. Nestrick, was arrested for driving while intoxicated in violation of section 11—501 of the Illinois Vehicle Code (Ill. Rev. Stat. 1975, ch. 95½, par. 11—501). During the course of the bench trial in the Circuit Court of Warren County, the trial judge granted the defendant's motion to strike testimony concerning a statement of his, alleged to have been made in violation of his *Miranda* rights. From this ruling the People appeal.

At 11:50 p.m. on November 8, 1975, the police were summoned to the scene of a one-car accident, immediately outside of the corporate limits of the city of Monmouth, Warren County, Illinois. At the time of their arrival, the defendant's automobile was in a ditch off the roadway with the driver's side door open. The defendant had his left leg out of the automobile and the keys were on the floorboard immediately below the ignition. The defendant had a strong odor of alcoholic beverage about him, his eyes were bloodshot, and he was vomiting.

The defendant was taken to the Warren County sheriff's office where he was placed under arrest for operating a motor vehicle while under the

influence of intoxicating beverage. While at the sheriff's office, the defendant was given a copy of the "Implied Consent Notice Form," and said form was read to him. At the conclusion of these procedures, the defendant consented to perform a breath test. Prior to the administration of the tests, an "Illinois State Police Alcohol Influence Report Form" was filled out. The first part of this form consists of a report on the defendant's performance of various balance tests. The defendant agreed to these but had great difficulty in executing them. However, the defendant's condition did improve during the time he was at the sheriff's office.

*Miranda* warnings being a prerequisite to the questions on the second half of the alcohol influence report, they were given to the defendant. When the officer then proceeded to ask the alcohol influence questions, the defendant stated, "I don't want to answer any more questions on that form." Thereafter, the questions on the form were never again asked of the defendant. The defendant was, however, asked to give a handwriting specimen in the space provided for on the form. This he agreed to do. Then, after the breathalyzer was set up and after the tests were administered, the defendant was asked why his car went into the ditch. The defendant stated that he had left a party and that while he was driving his vehicle home, he felt sick, so he tried to get into a parking lot, but missed and ended up in the ditch.

At the defendant's bench trial, his attorney moved to strike the testimony of an officer concerning the aforementioned statement of the defendant, alleging a violation of the defendant's *Miranda* rights. The trial judge granted the defendant's motion. As a result of this, the State's Attorney moved to terminate the proceedings pursuant to section 114—11(g) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat.1975, ch.38, par. 114—11(g)). This motion was denied by the trial judge. From these rulings, the State appeals.

■■ The order of the trial court, granting the defendant's motion to strike, had the effect of suppressing evidence. (*People v. Shipp* (3rd Dist. 1968), 96 Ill. App. 2d 364, 239 N.E.2d 296.) Where an order suppressing evidence is involved, the State may appeal the ruling. Ill. Rev. Stat. 1975, ch. 110A, par. 604(a)(1); *People v. Van De Rostyne* (1976), 63 Ill. 2d 364, 349 N.E.2d 16; *People v. Shipp* (3rd Dist. 1968), 96 Ill. App. 2d 364, 239 N.E.2d 296.

■■ The better practice is for such objections to the testimony to be made before the trial (*People v. Shipp* (3rd Dist. 1968), 96 Ill. App. 2d 364, 239 N.E.2d 296), but, if a timely motion is made during the trial and the statement is suppressed, the trial court must terminate the trial unless the State files a written notice that there will be no interlocutory appeal from the order to suppress. (Ill. Rev. Stat. 1975, ch. 38, par. 114—11(g).) In the case at bar, the State moved to terminate the proceeding, indicating

an intention to appeal. Therefore, the trial court erred in denying the motion to terminate.

■■ It is a contention of the State that we should adopt the State's view of the trend in the law concerning the constitutional safeguards guaranteeing the voluntariness of confessions by persons subjected to custodial interrogation. As established in *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, a person subjected to custodial interrogation could indicate, at any stage of the interrogation, that he no longer wishes to be interrogated and the interrogation must be discontinued until he thereafter consents to be questioned. However, the United State Supreme Court has now ruled that the exercise of the right to terminate the interrogation does not result in a prescription of indefinite duration of any further questioning. (*Michigan v. Mosley* (1975), 423 U.S. 96, 46 L. Ed. 2d 313, 96 S. Ct. 321.) Additional safeguards must be adherred to in such a situation. Not only must *Miranda* warnings be given and acknowledged initially, but also, when the person in custody refuses to speak on a certain matter, there must be a complete cessation of questions for a significant time (2 hours in *Mosley*) and, when the interrogation is resumed, it must concern a matter other than that about which the person in custody initially refused to speak. Furthermore, the *Miranda* warnings must have been repeated so as to give the person being interrogated an opportunity to effectively exercise them at the outset of the second period of questioning. The State contends that since the breathalyzer test was administered to the defendant between the two periods of questioning, this is a significant amount of time in which questioning had ceased. In addition, the State contends that, although *Miranda* warnings were not repeated before the second set of questions, this court should decide that the defendant was sufficiently informed of his rights and that a fresh set of *Miranda* warnings need not be given. In the alternative, the State suggests that this court should adopt the views of Mr. Justice White in his concurring opinion to *Michigan v. Mosley, i.e.*, to establish "voluntariness" as the standard for judging the waiver of the right to silence. However, the whole purpose of the *Miranda* and *Mosley* safeguards was to ensure voluntariness. Fortunately, we need not adopt any of the State's suggestions to decide this case.

■■ Where a person under custodial interrogation refuses to answer one question but continues to discuss the matter in the absence of further questions, that person does not manifest a desire to terminate the questioning, and there has been no denial of constitutional rights by the continuation of the questioning. (*People v. Walker* (1st Dist. 1971), 2 Ill. App. 3d 1026, 279 N.E.2d 23.) However, that situation is not involved in the case at bar. The defendant's statement indicated a desire on his part to terminate the questioning. He was not given new *Miranda* warnings prior

to the resumption of questioning. In addition, no significant time elapsed between the refusal to answer and the renewal of questioning. During the "lull," the defendant was requested to and provided a handwriting specimen on the "Alcohol Influence Report Form" and took a breathalyzer test. Had he refused to submit to the breathalyzer test, his driver's license could have been suspended. (Ill. Rev. Stat. 1975, ch. 95½, par. 11—501.1.) Furthermore, the breath analysis must be made on an instrument which automatically displays the test results visually to the arrested person, and two such analyses must be given not less than 15 minutes apart. (Ill. Rev. Stat. 1975, ch. 95½, par. 11—501.1.) So the State admits that only these few minutes passed between the defendant's refusal to respond to the questioning and the resumption of questioning. Most importantly, the questions on the back of the alcohol influence card, those questions which the defendant refused to answer, are designed to elicit the same information which the subsequent question actually evoked from the defendant. The reverse side of this form includes, in part, the following questions:

> "MIRANDA WARNING: Answers to questions below fall under the MIRANDA RULE. Information from these questions should not be placed in evidence unless the MIRANDA WARNING has been given.

Were you operating a vehicle?___ Where were you going?_____
What street or highway were you on?_____Direction of travel?_____
Where did you start from?_____ What time did you start?_____
What were you doing during the last three hours?_____

Have you been drinking?____What?_____How much? _____
Where?_____Started?_____am/pm___Stopped?____am/pm____
Are you under the influence of an alcoholic beverage now? _____
Did you get a bump on the head?_____ Were you involved in an accident today?_____ Have you had any alcoholic beverage since the accident? _____
If so, what?_____
Where?_____How much?____When? _____"

Therefore the resumption of questioning was clearly a violation of the defendant's *Miranda* rights.

■■ As to the handwriting specimen, we find the police officer's request that the defendant provide it also violated the defendant's constitutional rights. The defendant had already refused to answer questions from the same card he was asked to sign. The police officer was continuing the test the defendant refused to continue. In fact, the

handwriting specimen, the breathalyzer test (which the defendant could not practically refuse) and the subsequent questions, were all part of the original interrogation of the defendant.

■■ Therefore, we hold that the trial court properly excluded the testimony concerning the statement made by the defendant after he refused to answer any further questions. For this reason, we also conclude that the trial court's denial of the motion to terminate was not reversible error. Accordingly, we affirm the judgment of the Circuit Court of Warren County.

Affirmed.

ALLOY, P. J., and STENGEL, J., concur.